UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAB LIGHTING INC., | ECF Case |
| Plaintiff, | Civil Action No. 16-cv-3026 (AKH) |
| v. | Hon. Alvin K. Hellerstein |
| ABB LIGHTING, INC., GENERPOWER (SHANGHAI) CO., LTD AND GP ENERGY (SHANGHAI) CO., LTD | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM**

INDEX

I.    THE COMPLAINT GIVES FAIR NOTICE TO EACH DEFENDANT
      FOR EACH CLAIM ............................................................................................ 1

II.   CLAIMS 1-8 SUFFICIENTLY STATE CLAIMS FOR DESIGN PATENT
      INFRINGEMENT ............................................................................................... 4

      A.    Claim 1 – The Overall Appearance of the LED Parking Garage and LED
            Canopy Light is Similar to the D'484 Patent ............................................ 7

      B.    Claim 2 – The Overall Appearance of the LED Security Light is Similar
            to the D'029 Patented Design ................................................................... 10

      C.    Claim 3 – The Overall Appearance of the LED Slim Wall Pack is Similar
            to the D'320 Patent .................................................................................. 13

      D.    Claim 4 – The Overall Appearance of the LED High Bay Light is Similar
            to the D'453 Patent .................................................................................. 16

      E.    Claim 5 – The Overall Appearance of Defendants' LED Slim Wall Pack
            is Similar to the D'141 Patent ................................................................. 19

      F.    Claim 6 – The Overall Appearance of the LED Slim Wall Pack is Similar
            to the D'975 Patent .................................................................................. 22

      G.    Claim 7 – The Overall Appearance of the LED V-Line Flood Light is Similar
            to the D'147 Patent .................................................................................. 25

      H.    Claim 8 – The Overall Appearance of the LS Parking Garage Light is Similar
            to the D'534 Patent .................................................................................. 28

III.  CLAIM 10 SUFFICIENTLY STATES A CLAIM FOR BREACH OF CONTRACT .......... 31

IV.   CLAIM 11 SUFFICIENTLY STATES A CLAIM FOR TRADE SECRET
      MISAPPROPRIATION ........................................................................................ 33

      A.    RAB has Sufficiently Pled the Existence of Trade Secrets ......................... 33

      B.    RAB has Sufficiently Identified the Trade Secrets .................................... 34

      C.    RAB has Sufficiently Pled Improper Use of Trade Secrets ......................... 34

V.    LEAVE TO AMEND ANY DEFICIENT CLAIM SHOULD BE GRANTED ................... 36

TABLE OF AUTHORITIES

Cases

*Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365 (Fed. Cir. 2006) .................5

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ...........................1

*Ardente, Inc. v. Shanley*, 2010 WL 546485 (N.D. Cal. February 10, 2010).........................3

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am. Inc.*,
1994 WL 270714 (N.D. Cal. April 19, 1994)......................................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................1, 7

*Bruan, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 (Fed. Cir. 1992)................5

*Burroughs Payment Systems, Inc. v. Symco Group, Inc.*, 2012 WL 1670163
(N.D. Cal. May 12, 2012) ...................................................................................................34

*Contessa Food Products, Inc. v. Conagra, Inc.* 282 F.3d 1370 (Fed. Cir. 2002)................26

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294 (Fed. Cir. 2010)....................................5

*Decade Industries v. Wood Tech., Inc.*, 100 F.Supp.2d 979 (D. Minn. 2000).....................6

*Door-Master Corp v. Yorktowne, Inc.*, 256, F.3d 1308, 1313 (Fed. Cir. 2001) ...................26

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed.Cir. 2008) .................................4, 6

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015) ...................5

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009)....................33

*Foman v. Davis*, 371 U.S. 178, 183 (1962) .........................................................................36

*Ford Global Technologies, LLC, v. New World International Inc.*, 2016 WL 334904.........9,12, 15,
(E.D. Mich. June 16, 2016)…………………………………………………………...18, 21, 24, 27, 30

*Fort Miller Co. v. American Transport, Inc.*, 2013 WL 773108
(N.D. N.Y. February 28, 2013)............................................................................................32

*Gorham Co. v. White*, 81 U.S. 511, 528 (1871)...................................................................4

*Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357 (Fed. Cir 2013)........................................4, 7

*Helios Intern S.A.R.L. v. Cantemessa USA, Inc.*, 2013 3943267 (S.D.N.Y. July 31, 2013) .34

*Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948 (Fed.Cir.1993)..........................................6

*Hutzler Manufacturing Co., Inc., v. Bradshaw Int'l, Inc.*, 2012 WL 3031150
(S.D.N.Y. July 25, 2012) ....................................................................................................5

*Kowalchuk v. Stroup*, 61 A.D.3d 118 (First Dept. 2009).....................................................32

*Levit v. Bear Stearns & Co.*, 340 F.3d 94 (2d Cir. 2003) ...................................................5

*Metrokane, Inc. v. Wine Enthusiast*, 185 F.Supp.2d 321, 329 (S.D. New York 2002) .........4

*Medtech Products, Inc. v. Ranir, LLC*, 596 F.Supp.2d 778 (S.D.N.Y. 2008) ......................35

*North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999)................................33

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed.Cir. 1997)................................ 4

*Payless Shoesource, Inc. v. Reebok Intern. Ltd*., 998 F.2d 985 (Fed. Cir. 1993) ................. 6

*Performance Designed Products LLC v. Mad Catz, Inc.* 2016 WL 3552063
(S.D. Cal. June 29, 2016) ........................................................................................... 6

*RB Rubber Products, Inc. v. ECORE Int'l, Inc.*, 2012 WL 860416
(D. Or. March 13, 2012) ............................................................................................. 6

*Revision Military, Inc. v. Balboa Manufacturing Co.*, 700 F.3d 524 (Fed. Cir. 2012).......... 6

*SCG Characters LLC v. Telebrands Corp.*, 2015 WL 4624200 (C.D. Cal. Aug. 3, 2015)... 6

*SD Prot. V. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007)........................................35

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89
(2d Cir. 2007)............................................................................................................32

*U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F.Supp.2d 605 (S.D.N.Y. 2008) .........32

*Zond, Inc. v. Fujitsu Semiconductor, Ltd.*, 990 F. Supp.2d 50 (D. Mass. 2014) ..................3, 4

<u>Rules</u>

Federal Rule of Civil Procedure 8(a) .................................................................................3, 36

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1, 5, 6

Federal Rule of Civil Procedure 15(a)(2) ...........................................................................36

In determining a motion to dismiss under Federal Rule of Civil Procedure ("Rule")
12(b)(6), the Court accepts the factual allegations in the complaint as true but does not credit
"mere conclusory statements" or "threadbare recitals of the elements of a cause of action."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must raise plaintiff's right to relief
beyond the speculative level by stating "a claim to relief that is plausible on its face" *Bell Atl.*
*Corp. v. Twombly*, 550 U.S. 544, 550, 570 (2007). This plausibility standard should not be
misunderstood as probability. *Id.* at 556. "Because plausibility is a standard lower than probability,
a given set of actions may well be subject to diverging interpretations, each of which is plausible."
*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). The Complaint
brought by Plaintiff RAB Lighting Inc. ("RAB") is plausible on its face and provides ample notice
to each of the Defendants, ABB Lighting, Inc. ("ABB"), GenerPower (Shanghai) Co., Ltd
("GenerPower") and GP Energy (Shanghai) Co. Ltd. ("GP Energy"), of the claims against it.

I.      THE COMPLAINT GIVES FAIR NOTICE TO EACH DEFENDANT FOR EACH
        CLAIM

        Defendants argue that the Complaint lumps them together without giving each of them fair
notice of the claims against them. In particular, Defendants accuse RAB of "occasionally
combining GenerPower and GP Energy [as] "GP". Defendants' Brief in Support of Motion to
Dismiss Dkt 42 ("Def. Brief") pp. 17-18. In fact, the Complaint deliberately and expressly defines
"GP" as both GenerPower and GP Energy collectively. Complaint ¶ 5. The Complaint then
deliberately and consistently uses the term "GP" to mean both GenerPower and GP Energy except
where separate treatment is appropriate. For example, the breach of contract allegations of the
Complaint speak to actions by GP Energy because the NDA was signed under the name
GP Energy and all business dealings with RAB were under the name GP Energy. See Complaint
¶¶ 32-41. Similarly, Complaint ¶ 16 alleges that ABB purchased infringing fixtures from

GenerPower because the shipment records located by RAB are under the name GenerPower. See Declaration of Eric Lamb Exhibit 4, Dkt 40-4.

However, RAB contends that GenerPower and GP Energy are, in fact, exactly the same entity. This entity obtained trade secrets from RAB under the name GP Energy in an ostensible bid to become a RAB supplier, while simultaneously using those trade secrets to manufacture and sell infringing products to ABB under the name GenerPower. Defendants find fault with RAB's allegations, saying that an overlap in employees and similar websites and addresses is not a plausible basis for legal identity. Def. Brief p. 17. Defendants overlook the allegations that GP Energy and GenerPower not only have overlapping employees, but the same management. GP Energy and GenerPower not only have similar addresses, but addresses in the same building. GP Energy and GenerPower not only have similar websites, but also similar products. Complaint ¶ 5. Moreover, and most tellingly, the Chinese business certificates displayed on the GP Energy and GenerPower websites have *exactly the same* registration numbers. Complaint ¶ 5. Accepting these allegations as true, it is more than plausible that GP Energy and GenerPower are the same legal entity.

Even if GenerPower and GP Energy are separate legal entities, the Complaint establishes at least a plausible basis for concluding that GenerPower and GP Energy are acting in concert and participation with and as agents of each other, and that they are acting in concert and participation with and as agents of ABB: RAB provided technical drawings for four fixtures to GP Energy under the NDA, including drawings for the FFLED and SLIM fixtures. Complaint ¶ 33. The FFLED fixture is protected by two of the patents-in-suit. Complaint ¶ 34. The SLIM fixture is protected by one of the patents-in-suit. Complaint ¶ 34. GP Energy and GenerPower used the RAB technical drawings (which include the FFLED and SLIM drawings) and other confidential

information to manufacture fixtures for sale to ABB. Complaint ¶ 40. GenerPower sells the infringing fixtures to ABB. Complaint ¶ 16. GenerPower and GP Energy exercise direction and control over ABB. Complaint ¶ 7. GP Energy, GenerPower and ABB acted in concert and participation in their wrongful activities. Complaint ¶ 7. See *Ardente, Inc. v. Shanley*, 2010 WL 546485, *4 (N.D. Cal. February 10, 2010) (alter ego plausibly pled where same individual was president of corporate defendant and member of LLC defendant, such individual executed contract on behalf of LLC defendant and directed marketing of corporate defendant, and where corporate defendant and LLC defendant were located together such that transfer of inventory involved no physical movement of products).

In any event, Rule 8(a) does not preclude group pleading, it only requires that a pleading "group or otherwise" be sufficiently clear to put the defendants on notice of the claims against them. *Zond, Inc. v. Fujitsu Semiconductor, Ltd.*, 990 F. Supp.2d 50, 53 (D. Mass. 2014). In *Zond*, Fujitsu accused Zond of improperly asserting patent infringement against defendants Fujitsu Ltd and Fujitsu USA as a group. Zond, represented by Defendants' counsel in this suit, successfully defended the motion to dismiss. The court found that Zond's allegation that "Fujitsu" directly infringed, willfully infringed, and induced infringement of, Zond's patents was facially plausible.

> [I]t is not impossible for both Fujitsu USA and Fujitsu Ltd. to have engaged in each of the acts alleged by Zond. Though it may be a stretch for the court to infer [such acts] it is not for the Court to evaluate, at this stage, whether the plaintiff will be able to obtain the necessary evidence to prove its claims. Furthermore, determining the exact operations of the Fujitsu corporate group, and thus the relevant assignment of potential liability, requires corporate structure information that is not readily available to the public. It would seem illogical to allow Fujitsu potentially to escape liability because of its ability to keep its corporate structure confidential.

*Id.* (internal quotation marks and citations omitted). Likewise, Defendants should not be allowed to potentially escape liability by saying that RAB has not pled the relationships between them with precise exactitude, while simultaneously keeping the nature of those relationships in confidence.[1]

RAB has sufficiently pled Claims 1-9 asserting patent infringement by each of the Defendants individually, against GP Energy and GenerPower as a single entity, and acting in concert and participation with each other. RAB has also sufficiently pled Claims 10-11 asserting breach of contract and theft of trade secrets against GP Energy and GenerPower as a single entity acting under two names, and acting in concert and participation with each other.

## II.   CLAIMS 1-8 STATE CLAIMS FOR DESIGN PATENT INFRINGEMENT

A design patent is infringed when an "ordinary observer" would think the accused design was substantially the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed.Cir. 2008), citing *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). The ordinary observer test considers "the appearance of a design as a whole." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed.Cir. 1997). The comparison is made giving "such attention as a purchaser usually gives." *Egyptian Goddess*, 543 F.3d at 670; *Gorham*, 81 U.S. at 528. "A design need not be identical to the patented design for infringement to occur." *Metrokane, Inc. v. Wine*

---

[1] Defendants seek to further disguise their interrelationship by attempting to preclude RAB's introduction of sworn testimony concerning their unity. Indeed, GenerPower and GP Energy acknowledged that "[m]ost of Mr. Murphy's deposition testimony relied upon by Plaintiff in its Opposition [to GenerPower and GP Energy's first motion to dismiss] concerns the relationship between ABB, [GenerPower and GP Energy]." GenerPower and GP Energy's Reply Brief in Support of Motion to Dismiss Dkt 44 p. 14. GenerPower and GP Energy incorrectly asserted in the reply that all or nearly all of Murphy's deposition was designated confidential. In the prior suit, counsel for ABB, Mr. Tung, acknowledged that he could not properly designate the entire transcript as confidential and then failed to make specific designations after receiving the transcript, despite repeated requests from RAB within the designation period. Moreover, even if portions of the deposition had been timely designated, RAB disputes that all of the designated information is, in fact, confidential and properly protected from disclosure.

*Enthusiast*, 185 F.Supp.2d 321, 329 (S.D. New York 2002) (citing *Bruan, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 820 (Fed. Cir. 1992).

Defendants ask the Court to dismiss each of RAB's design patent infringement claims for failure to state a claim under Rule 12(b)(6) on the grounds that Defendants' products are dissimilar from the patented designs. A design patent complaint is subject to the same standards as any other complaint. "A court's task … is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1364 (Fed. Cir 2013), quoting *Levit v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003). "Whether the facts as plausibly pleaded can be proved is a matter for trial." *Id.*

Defendants' specific arguments with respect to each patent design are addressed individually below. However, all of these arguments suffer from the same fatal flaw. Defendants point to small differences between the patented designs and the accused products – differences that do not render the accused designs as a whole plainly dissimilar from the patented designs. "Differences … must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation. Where … the claimed design includes several elements, the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015), citing *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010). "An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error." *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1335, citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006); see also *Hutzler Manufacturing Co., Inc., v. Bradshaw Int'l, Inc.*, 2012 WL 3031150, *14 (S.D.N.Y. July 15, 2012)("[Defendant's] arguments regarding the differences between the

- 5 -

[designs] focus too narrowly on the details of their ornamentation, rather than considering the overall look of the design."); *Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993)(district court erred by failing to consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design); *Decade Industries v. Wood Tech., Inc.*, 100 F.Supp.2d 979, 982 (D. Minn. 2000)("While Wood has tweaked some of the angles and proportions of the Sanus design and has inserted additional shelves between the upright legs, these minor changes do not materially alter the substantial visual likeness of the two designs when they are viewed in their entirety.")

The relatively minor quality of the distinctions identified by Defendants is even starker when viewed with the relevant prior art identified on the face of the patents-in-suit. "[R]esolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Egyptian Goddess*, 543 F.3d at 678. Including prior art in the analysis is particularly important in evaluating the impact of differences in the two designs because the prior art provides context for weighing the relative importance of the perceived differences. *Id.* The prior art provides "a frame of reference and is therefore often useful in the process of comparison.'" *Id.* at 677; *Revision Military, Inc. v. Balboa Manufacturing Co.*, 700 F.3d 524, 527 (Fed. Cir. 2012).[2]

---

[2] The Court may consider prior art when considering a Rule 12(b)(6) motion to dismiss design patent claims. See *Performance Designed Products LLC v. Mad Catz, Inc.* 2016 WL 3552063, *7 (S.D. Cal. June 29, 2016). Further, "a court may properly take judicial notice of patents, as they are documents on the public record." *SCG Characters LLC v. Telebrands Corp.*, 2015 WL 4624200, *5 (C.D. Cal. Aug. 3, 2015), citing *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n. 27 (Fed.Cir.1993)(taking judicial notice of design patents and weighing prior art in considering defendants' motion to dismiss patent infringement claims); see *Applied Materials, Inc. v. Advanced Semiconductor Materials Am. Inc.*, 1994 WL 270714, at *2 (N.D. Cal. Apr. 19, 1994)(taking judicial notice of USPTO records on motion to dismiss), aff'd sub nom., *Applied Material, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 104 F.3d 376 (Fed. Cir. 1996); *RB*

RAB need not prove design patent infringement at this stage; RAB's claims need only to rise above the speculative level and be plausible on their face. *Hall,* 705 F.3d at 1364; citing *Twombly*, 550 U.S. at 570. As discussed below, the accused designs plausibly infringe the patented designs when compared in isolation and, even more so, when viewed with the prior art.

A.   Claim 1 – The Overall Appearance of the LED Parking Garage and LED Canopy Light is Similar to the D'484 Patent

Claim 1 asserts that Defendants' LED Parking Garage Light and LED Canopy Light infringe US Design Patent No. D547484 ("D'484 Patent"). As shown by the side-by-side comparison in Complaint ¶ 19 and below, the overall similarity of the accused design to the patented design makes it more than plausible that an ordinary observer could be deceived into believing the accused products are the same as RAB's patented design.

| RAB's Patented Design D'484 Figs. 1 & 2 | Defendants' LED Parking Garage Light LED Canopy Light | Prior Art US D232376, Figs. 1 & 3 |
|---|---|---|
|  |  |  |
|  |  |  |

The shape of the top housing and the bottom cover of the light are significant visual features contributing to the overall appearance of the patented design and the accused products.

*Rubber Products, Inc. v. ECORE Int'l, Inc.*, 2012 WL 860416, *4 - 5 (D. Or., March 13, 2012) (taking judicial notice of prior art submitted to USPTO).

The top housing in both the patented design and the accused product are square in cross-section, have a flat top surface, increase in cross-sectional area (i.e., flare outward) as the top housing extends downward, and include tab-like features extending outwardly from the surface near the top of the top housing. The bottom covering for the light in both the patented design and the accused products are recessed under the top housing, generally square in cross-section, and extend downward in a curved[3], tapering fashion from the top housing ending in a relatively large, substantially flat bottom surface. This strong similarity between the top housings of the patented design and the accused product together with a strong similarity between the bottom covers for the patented design and the accused product, make it more than plausible that an ordinary observer could be deceived into believing that the accused product is the patented design.

Although a simple comparison of the patented design and the accused product is sufficient to conclude that an ordinary observer may plausibly be deceived, considering the representatively close patent prior art reference US D232376 makes the likelihood of deception all the more apparent.[4] Schell Decl. Ex. A. For example, while the patented design and the accused products have a top housing that has a flat top surface and increases in cross-sectional area as the top housing extends downward, the top surface of the housing of US D232376 has an outwardly flared edge and the cross-sectional area of US D232376 remains constant as it extends downward. Also,

---

[3] Defendants assert that the bottom covering of the LED Parking Garage Light and LED Canopy Light include a straight edge. Auerbach Declaration Exhibit A Dkt 43-1. RAB believes all edges of the bottom portions of these products are curved, and that referring to one edge as being "straight" is not accurate. The reason this edge appears straight in the Exhibit A is that the curved edge is oriented directly toward the viewer so that the curvature is not apparent.

[4] There are numerous prior art references listed on the face of the design patents-in-suit. RAB has selected what it believes is at least an example of one of the closer patent prior art references for discussion. Copies of these prior art references are attached to the Declaration of Dennis Schell ("Schell Decl."). Additionally, the declaration includes links to Google patents for each patent prior art patent cited on the face of the patents-in-suit.

unlike the patented design and the accused products, US D232376 does not include tab-like features extending outwardly from the side surface near the top of the top housing. Still further, unlike the similar bottom covering appearance for the patented design and the accused products, the bottom covering for the light in US D232376 extends downwardly in two separately angled stages, each defining straight, planar sections with defined angles between the panels instead of in a curved fashion, and the bottom portion ends with a comparatively tiny bottom surface.

Defendants point to small differences for individual features of the patented design and accused products but fail to explain how those distinctions makes the overall appearance dissimilar. Specifically, Defendants argue that the surfaces of the lower cover come together at a wedge surface for the patented design and at a straight edge for the accused products. Def. Brief pp. 5, 15-16. However, Defendants' description is not accurate. Rather than a 'wedge' versus 'straight' distinction, there is simply a difference in the size of the radius used in joining adjacent surfaces. This difference in the radius does not create a different overall impression. Defendants also point out that the top housing of the accused products have flanges (tab-like features) on three rather than four sides and that the flanges have top edges that are flat rather than rounded. Again, this is a small difference that does not detract from the overall similarity of design. Finally, Defendants point out that the ratio of the heights of the housing and bottom cover differ. However, the ratios are not so different that an ordinary observer would readily distinguish them.

Defendants also fail to weigh the significance of these distinctions against the significance of the similarities in relation to the overall design. "Defendants identify differences between the accused parts and the patented designs, but fail to weigh those differences against the similarities." *Ford Global Technologies, LLC, v. New World International Inc.*, 2016 WL 3349041, *10 (E.D. Mich., June 16, 2016). In summary, the small differences in radius between adjacent surfaces,

number of and shape of the top edge of the tab-like features and height proportion contribute little to the overall appearance as compared to the overall similarities of the shapes of the top housing (square cross-section, flat top surface, downward increase in cross-sectional area, tab-like features near the top) and the bottom covering (recessed under top housing, square cross-section, extending downward in a curved tapering fashion to a relatively large and substantially flat bottom surface). It is more than plausible that an ordinary observer familiar with the prior art would be deceived into believing the accused products are the same as the patented design.

      B.    <u>Claim 2 – The Overall Appearance of the LED Security Light is Similar to the D'029 Patented Design</u>

Claim 2 asserts that Defendants' LED Security Light infringes US Design Patent No. D569029 (the "D'029 Patent"). As shown by the side-by-side comparison in Complaint ¶ 20 and below, the overall similarity of the accused design to the patented design makes it more than plausible that an ordinary observer could be deceived into believing the accused product is the same as RAB's patented design.

| RAB's Patented Design D'029 Figs. 1 & 4 | Defendants' LED Security Light | Prior Art US D202803, Figs. 1 & 4 |
|---|---|---|
|  |  |  |
|  |  |  |

The shape of the base plate, the housing, and the lower lamp cover are significant visual features contributing to the overall appearance of the patented design and the accused product. Both the patented design and the accused product include a plate-like base at the back of the fixture, which extends outward slightly around the perimeter of the housing at the back of the fixture. The housing in both the patented design and the accused product includes a prominent upper hood portion extending forward from the plate-like base with a well-defined substantially horizontally disposed flat upper surface. The housing in both the patented design and the accused product include a large cut-away on the bottom half. When viewed from the side, the housing resembles a P in both the patented design and the accused product, with the upper part of the P forming a hood-like portion for a lens. The cut-away portion of the housing contains the lens, and the lens follows the same general contour as the top housing while being slightly recessed under the hood of the housing. This strong similarity between the plate-like back, the cut-away housing,

- 11 -

and the lens portion of the patented design and the accused product together with a strong similarity between the bottom lens of the patented design and the accused product, make it more than plausible that an ordinary observer could be deceived into believing that the accused product is the patented design.

Although a simple comparison of the patented design and the accused product is sufficient to conclude that an ordinary observer may plausibly be deceived, considering the representatibley close patent prior art US D202803 makes the likelihood of deception all the more apparent. Schell Decl. Ex. B. For example, while the patented design and the accused product have a hood portion that extends in a flat, substantially horizontal manner from the rear of the fixture to the front of the fixture, the top of the design depicted in US D202803 has a large and prominent notched shelf portion near the front of the fixture. Also, unlike the patented design and the accused product, the fixture depicted in US D202803 has a thick wedge-like portion at the back of the fixture tending to follow the general contour of the fixture.

Defendants point to small differences for individual features of the patented design and accused products but fail to explain how those distinctions makes the overall appearance dissimilar. Specifically, Defendants argue that the patented design has a contoured front while the accused device has a flat front. Def. Brief pp. 7, 16-17. Defendants overlook the greater similarity that the lens portion of both designs follows the same contour as the rest of the respective fixture, one being flat and the other being slightly curved. Moreover, this distinction is relatively minor in comparison to all of the similarities between the patented design and the accused product and does not create a different overall impression.

Defendants also fail to weigh the significance of this distinction against the significance of the similarities in relation to the overall design. See *Ford Global, 2016 WL 3349041 at *10.* In

summary, the small difference of a straight as opposed to slightly curved front surface contributes little to the overall appearance as compared to the overall similarities of the shapes of the base plate (plate-like base extending outward slightly around the perimeter of the housing and lower lamp cover), housing (prominent upper hood extending forward from plate-like base with a well-defined substantially horizontally disposed flat upper surface) and bottom surface (large cut-away on bottom half resembling a "P" with a slightly recessed lens filling the cut-away and following same general contour as the top housing). It is more than plausible that an ordinary observer familiar with the prior art would be deceived into believing the accused products are the same as the patented design.

      C.    <u>Claim 3 – The Overall Appearance of the LED Slim Wall Pack is Similar to the D'320 Patent</u>

Claim 3 asserts that the Defendants' LED Slim Wall Pack infringes US Design Patent No. D691320 ("D'320 Patent). As shown by the side-by-side comparison in Complaint ¶ 21 and below, the overall similarity of the accused design to the patented design makes it more than plausible that an ordinary observer could be deceived into believing the accused product is the same as RAB's patented design.

| RAB's Patented Design D'320 Fig. 1 | Defendants' LED Slim Wall Pack | Prior Art US D577146 Figs. 1[5] & 3 |
|---|---|---|
|  |  |  |
|  |  |  |

The shape of the housing and mount are significant visual features contributing to the overall appearance of the patented design and the accused product. Both the patented design and the accused product have vertically oriented wedge shaped housings. Both housings include a flat top portion and extend downwardly in a curved fashion toward a wider rectangular bottom. Both the patented design and the accused product have generally flat housing sides that meet the front surface at approximately right angles joined at very small radius edges. This strong similarity between wedge shaped housings of the patented design and the accused product make it more than plausible that an ordinary observer could be deceived into believing that the accused product is the patent design.

---

[5] Figure 1 of US D577146 is presented in a mirror image orientation from US D577146 as published. The mirror image orientation was obtained using the "Flip Horizontal" rotational editing tool in Microsoft Paint®.

Although a simple comparison of the patented design and the accused product is sufficient to conclude that an ordinary observer may plausibly be deceived, considering the representatively close patent prior art US D577146 makes the likelihood of deception all the more apparent. Schell Decl. Ex. C. For example, while the patented design and the accused product have a flat top portion defining the housing, the housing depicted in US D577146 does not. Instead, the curved front of the housing depicted in US D577146 continuously curves until meeting the back of the fixture – without a flat top. The design depicted in US D577146 also includes prominent chamfers (sometimes referred to as "bevels") between the side walls and the front of the fixture, in contrast to the very small radius right angle joining the sides and front of both the patented design and the accused product.

Defendants point to small differences for individual features of the patented design and accused product but fail to explain how those distinctions makes the overall appearance dissimilar. Specifically, Defendants argue that the ratio of the bottom width to top width of the housings is different, but this differences pales in comparison to the difference in overall appearance of the similarities especially since the prior art design has no width to the top of the housing at all (i.e., no flat top portion). Similarly, Defendants identify a difference in the ratio of the width of the mount to the bottom width of the housing. However, the ratios are not so different that an ordinary observer would easily distinguish them.

Defendants also fail to weigh the significance of these distinctions against the significance of the similarities in relation to the overall design. See *Ford Global, 2016 WL 3349041 at *10.* In summary, the small difference in ratios of the bottom width to top width of the housings and in the width of the bottom mounts contributes little to the overall appearance as compared to the overall similarities of the shapes of the housings (vertically oriented wedge-shaped with flat top and

extending downward in a curved fashion to a wider rectangular bottom and sides meeting front surface at right angles with small radius edge). It is more than plausible that an ordinary observer familiar with the prior art would be deceived into believing the accused products are the same as the patented design.

    D.    <u>Claim 4 – The Overall Appearance of the LED High Bay Light is Similar to the D'453 Patent</u>

Claim 4 asserts that the Defendants' LED High Bay Light infringes US Design Patent No. D690453 ("D'453 Patent"). As shown by the side-by-side comparison in Complaint ¶ 22 and below, the overall similarity of the accused design to the patented design makes it more than plausible that an ordinary observer could be deceived into believing the accused product is the same as RAB's patented design.

| RAB's Patented Design D'453 Figs. 2, 5 & 1 | Defendants' LED High Bay Light | Prior Art US D573288, Figs. 1, 2 & 8 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

The radially arranged fins with a band surrounding the fins, top driver housing, and bottom lens are significant visual features contributing to the overall appearance of the patented design and the accused product. The band extends in a belt-like fashion around the fins with the band being positioned such that a significant portion of the fins extend above and below the band in both designs. The fins extending downward from the band in both the patented design and the accused product are prominent when viewed from the bottom.[6] Both the patented design and the accused product also have a large and prominent top driver housing on top of the fins, spanning at least half of the diameter of the fins and having a height about the same as the fins. The strong similarity

---

[6] The prominence of this feature is most readily seen in the bottom perspective views.

between the prominent fins, bands, driver housings, and bottom lenses of the patented design and the accused product make it more than plausible that an ordinary observer could be deceived into believing that the accused product is the patented design.

Although a simple comparison of the patented design and the accused product is sufficient to conclude that an ordinary observer may plausibly be deceived, considering the representatively close patent prior art US D573288 makes the likelihood of deception all the more apparent. Schell Decl. Ex. D. For example, while the patented design and the accused product have a prominent large driver housing on top of the fins, US D573288 lacks any housing, using only a narrow mounting pipe. Additionally, the patented design and accused product each have the band surrounding the fins positioned such that the fins extend substantially above and below the band. In contrast, the band of US D573288 is positioned at the bottom of the fins and there appear to be little or no fins extending below the band. Moreover, the design in US D573288 has a bulbous bottom lens and lacks lacks the flat lens the patented design and the accused product.

Except for one larger distinction discussed below, Defendants point to small differences for individual features of the patented design and accused products but fail to explain how those distinctions makes the overall appearance dissimilar. Specifically, Defendants argue that the accused product is ringed by a "thick" radial component or band and the patented design has a "thin" one. Defendants also point out that the accused product includes a "circular" top driver housing while the patented design housing is "square." These differences pale in comparison to the similarities in overall appearance when taking into consideration the prior art design, which lacks a top driver housing and includes a bulbous bottom lens.

The only more significant distinction identified by Defendants is the bell-shaped light shade attached to the bottom of the accused product. However, this additional component is not

properly considered in the infringement analysis. See *Alan Tracy, Inc. v. Trans Globe Imports, Inc.*, 60 F.3d 840 (Fed. Cir. 1995).[7] A patented design of a table lamp base is infringed by a similar table lamp base regardless of the shape of the light shade attached to it.

Additionally, Defendants fail to weigh the significance of their asserted distinctions against the significance of the similarities in relation to the overall design. See *Ford Global, 2016 WL 3349041 at \*10.* In summary, the small differences in the thickness of the radial component and the shape of the top housing contributes little to the overall appearance as compared to the similarities in the fins (radially arranged and prominent viewed from below), bands (belt-like with fins extending above and below), driver housings (prominent, spanning at least half of the diameter of the fins and about the same height as the fins), and bottom lens (encircled by wide flat band). It is more than plausible that an ordinary observer familiar with the prior art would be deceived into believing the accused products are the same as the patented design.

> E.    Claim 5 – The Overall Appearance of Defendants' LED Slim Wall Pack is Similar to the D'141 Patent

Claim 5 asserts that the Defendants' LED Wall Pack infringes US Design Patent No. D579141 ("D'141 Patent"). As shown by the side-by-side comparison in Complaint ¶ 23 and below, the overall similarity of the accused design to the patented design makes it more than plausible that an ordinary observer could be deceived into believing the accused product is the same as RAB's patented design.

---

[7] In *Alan*, plaintiff alleged that a component of defendant's light fixtures, the lens panel, infringed plaintiff's patent. While the Federal Circuit reversed the district court's holding of infringement, it did so based on a comparison of the lens panels, not a comparison of any of the other elements making up the entire fixture. *Id.*

| RAB's Patented Design D'141 Figs. 3[8] & 7 | Defendants' LED Wall Pack[9] | Prior Art US 6,467,928 Figs. 2a & 4a |
|---|---|---|
|  |  |  |
|  |  |  |

The shape of the housing, lens and mounting are significant visual features contributing to the overall appearance of the patented design and the accused product. Both the patented design and the accused product include a prominent housing having an upper surface extending from the back to the front, the surface having a single continuous curve downward from the back to a flat, blunt front end. The patented design and the accused product also have a lens on the bottom that is smaller than the bottom of the fixture and disposed toward the front end. The strong similarity between these visually prominent features of the housing and lens of the patented design and the accused product make it more than plausible that an ordinary observer could be deceived into believing that the accused product is the patented design.

---

[8] Figure 3 of the D'141 Patent is presented in a mirror image orientation from what is depicted in D'141 as published. The mirror image orientation was obtained using the "Flip Horizontal" rotational editing tool in Microsoft Paint®.

[9] The bottom figure of the LED Wall Pack is presented in a mirror image orientation from what is depicted in Exhibit E of Defendants' motion to dismiss. The mirror image orientation was obtained using the "Flip Horizontal" rotational editing tool in Microsoft Paint®.

Although a simple comparison of the patented design and the accused product is sufficient to conclude that an ordinary observer may plausibly be deceived, considering the representatively close patent prior art US 6,467,928 makes the likelihood of deception all the more apparent. Schell Decl. Ex. E. For example, while the patented design and the accused product have a downwardly continuously curved upper surface extending from the back portion of the fixture to a blunt front end, US 6,467,928 discloses a design with two adjacent flat surfaces, a flat top surface, and a relatively long, flat, downwardly angled portion extending forward to a pointed front end. While the patented design and the accused product have a bottom lens portion significantly smaller than the bottom of the fixture, the design in US 6,467,928 has a lens portion occupying substantially the entire bottom portion of the fixture.

Defendants point to small differences for individual features of the patented design and accused products but fail to explain how those distinctions makes the overall appearance dissimilar. Specifically, Defendants argue that the accused product has a rectangular lens that has an area about one-quarter of the bottom of the housing and the patented design has a square lens that has an area of about two-thirds of the bottom. Def. Brief pp. 10-11, 25. Defendants also point out that the top surface of the housing of the accused product has a sharp tapering while the patented design has a gradual tapering. Auerbach Declaration Exhibit E (Dkt 43-5). However, any difference in tapering is too small for an ordinary observer to appreciate. The difference in the relative size and shape of the lenses and the lenses' contributions to overall appearances pale in comparison to the similarities in overall appearances, especially when considering the differences from the prior art design which has a bottom lens that spans substantially the entire bottom surface.

Defendants also fail to weigh the significance of this distinction against the significance of the similarities in relation to the overall design. See *Ford Global, 2016 WL 3349041 at *10.* In

summary, the small differences in the size of the lens and tapering (a nearly imperceptible difference) contribute little to the overall appearance as compared to the overall similarities of the shape of the housing (upper surface with continuous curve downward flat, blunt front end) and lens (bottom smaller bottom of housing and disposed toward front end). It is more than plausible that an ordinary observer familiar with the prior art would be deceived into believing the accused products are the same as the patented design.

      F.    <u>Claim 6 – The Overall Appearance of the LED Slim Wall Pack is Similar to the D'975 Patent</u>

Claim 6 asserts that Defendants' Low Wattage LED Slim Wall Pack infringes US Design Patent No. D612975 ("D'975 Patent"). As shown by the side-by-side comparison in Complaint ¶ 24 and below, the overall similarity of the accused design to the patented design makes it more than plausible that an ordinary observer could be deceived into believing the accused product is the same as RAB's patented design.

| RAB's Patented Design D'975 Fig. 1 & 6 | Defendants' Low Wattage LED Slim Wall Pack | Prior Art US D203060 Figs. 1 & 5 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

The shape of the housing and its hood are significant visual features contributing to the overall appearance of the patented design and the accused product. Both the patented design and the accused product include a hood projecting forward from the housing and forming a cavity, the cavity formed by a top and sides of the hood. The sides of both the patented design and the accused product extend furthest forward from the back of the fixture near the top and curves downward and rearward to form the sides, which extend to the bottom of the fixture. Within the underside of the top of the hood of both is a lens. Beneath the hood and extending to the bottom of the housing, both the patented design and the accused product define a roughly square vertically face that is about perpendicular with the underside of the top of the hood. The strong similarity between the housing, hood, and lens of the patented design and the accused product create,

creating an overall similar profile from all sides, make it more than plausible that an ordinary observer could be deceived into believing that the accused product is the patented design.

Although a simple comparison of the patented design and the accused product is sufficient to conclude that an ordinary observer may plausibly be deceived, considering the representatively close patent prior art US D203060 makes the likelihood of deception all the more apparent. Schell Decl. Ex. F. For example, while the patented design and the accused product have an LED/bulb horizontally disposed under a hood with a small lens portion positioned in close proximity around the LED/bulb, the positioning of the bulb in US D203060 is masked by a large, curved lens on the front of the fixture. Moreover, while both the patented design and the accused product have a large cavity below the hood portion and lens, there is no similar cavity in US D203060; any would-be cavity is covered by the large, curved lens. Still further, the design disclosed by US D203060 is substantially elongated both in how wide it is and in depth from back to front, while the overall proportions and profiles of the patented design and the accused product are similar.

Defendants point to alleged differences for individual features of the patented design and accused products but fail to explain how those distinctions makes the overall appearance dissimilar. Specifically, Defendants assert that the hood of the accused device extends down one-tenth the overall height of the fixture while the patented design extends down one-third the overall height. Def. Brief pp. 11-12, 26. However, these specific relative sizes appear to exaggerate differences that would not be noticeable to an ordinary observer. Moreover, a more careful measurement of these features reveals that the hood of the accused device extends down 16% of the overall height of the fixture while the patented design extends down 27% of the overall height—an 11% difference as opposed to Defendants' asserted 23% difference. Still further, if similar relative sizes are made on the design disclosed in US D203060, the hood portion of US

D203060 extends down almost half (48%) of its overall height, making the accused design and the patented design appear all the more similar. Defendants also assert that the hood extends in from the sides in the patent design but not in the accused design, and the vertical face in the patented design appears grooved and is not in the accused design. The small differences in these features contribute little to the overall appearances in comparison to the similarities in profile and general arrangement of features of the housing, hood top and sides, lens, and vertical face contributes to the overall appearances, especially when considering the differences from the prior art design.

Defendants also fail to weigh the significance of this distinction against the significance of the similarities in relation to the overall design. See *Ford Global, 2016 WL 3349041 at *10.* In summary, the small differences in the length of the hood and grooved face contribute little to the overall appearance as compared to the overall similarities of the housing and hood (hood projecting forward on top and sides to form a cavity, sides curving downward to the rear and extending to bottom of fixture, roughly square vertically face perpendicular to underside of top of hood). It is more than plausible that an ordinary observer familiar with the prior art would be deceived into believing the accused products are the same as the patented design.

G.      Claim 7 – The Overall Appearance of the LED V-Line Flood Light is Similar to the D'147 Patent

Claim 7 asserts that Defendants' LED V-Line Flood Light infringes US Design Patent No. D643147 ("D'147 Patent"). As shown by the side-by-side comparison in Complaint ¶ 26 and below, the overall similarity of the accused design to the patented design makes it more than plausible that an ordinary observer could be deceived into believing the accused product is the same as RAB's patented design.

| RAB's Patented Design D'147 Fig. 1 | Defendants' LED V-Line Flood Light | Prior Art US D629550 Figs. 8 & 9 |
|---|---|---|
|  |  |  |
|  |  |  |

The prominent features in the shape of the housing contribute significantly to the overall appearance of the patented design and the accused product. Both the patented design and the accused product include an overall shape of the housing resembling a rectangular prism that gradually increases in height and width from the rear to the front. Both the patented design and the accused product also include identifiable rear and front portions that blend and follow the same contour with a visible demarcation line between the rear and front portions. The top of both the patented design and the accused product extend further on the top surface than on the bottom surface presenting a forward leaning appearance in the front area near the lens.[10] This strong similarity between the prominent features of the housings of the patented design and the accused product make it more than plausible that an ordinary observer could be deceived into believing that the accused product is the patented design.

---

[10] The mounting features are disregarded in the overall appearance because they are disclaimed subject matter shown in broken line and are therefore not part of the claimed designed. *Contessa Food Products, Inc. v. Conagra, Inc*. 282 F.3d 1370, 1377 (Fed. Cir. 2002) citing *Door-Master Corp v. Yorktowne, Inc.*, 256, F.3d 1308, 1313 (Fed. Cir. 2001).

Although a simple comparison of the patented design and the accused product is sufficient to conclude that an ordinary observer may plausibly be deceived, considering the representatively close patent prior art reference US D629550 makes the likelihood of deception all the more apparent. Schell Decl. Ex. G. For example, while the patented design and the accused products resemble a rectangular prism that gradually increases in thickness height and width from the rear to the front, the prior art US D629550 design includes a front housing that is clearly larger than a rear housing with a substantial and very distinct step increase in size between the two. Also, while the top of both the patented design and the accused product extend further on the top surface than on the bottom surface presenting a forward leaning appearance in the front area near the lens, the design disclosed in US D629550 presents a vertical front that does not present a forward leaning appearance.

Defendants point to small differences for individual features of the patented design and the accused products but fail to explain how these distinctions make the overall appearance dissimilar. Specifically, Defendants argue that the accused product has "straight left and right bases of approximately equal length" and the patented design has a "curved right base longer than and a straight left bases." Def. Brief pp. 12-14, 26-27. Defendants also point out that the patented design has a front hood attached but the accused product does not. Def. Brief p. 12. Again, these are visually very small differences, especially in comparison to the predominating similarities, and these minor differences do not significantly add to the appearance of design and do not detract from the overall similarity of the designs as a whole

Defendants also fail to weigh the significance of these distinctions against the significance of the similarities in relation to the overall design. See *Ford Global, 2016 WL 3349041 at *10.* In summary, the small differences in vertical edges at the rear and between the front and rear portions

and the absence of a hood contribute little to the overall appearance as compared to the overall similarities of the shapes of the housing (rectangular prism that gradually increases in thickness height and width from the rear to the front, identifiable rear and front portions that blend and follow the same contour with a visible demarcation line between the rear and front portions, top surfaces that extend further than the bottom surface presenting a forward leaning appearance in the front area near the lens, prominent linear vents on the upper surface of the front portion, and a flat rear surface). It is more than plausible that an ordinary observer familiar with the prior art would be deceived into believing the accused products are the same as the patented design.

H.    Claim 8 – The Overall Appearance of the LS Parking Garage Light is Similar to the D'534 Patent

Claim 8 asserts that Defendants' LS Parking Garage Light infringes US Design Patent No. 747534 ("D'534 Patent"). As shown by the side-by-side comparison in Complaint ¶ 25 and below, the overall similarity of the accused design to the patented design makes it more than plausible that an ordinary observer could be deceived into believing the accused product is the same as RAB's patented design.

| RAB's Patented Design D'534 Fig. 2, 4, & 6 | Defendants' LS Parking Garage Light | Prior Art US D624686 Figs. 2[11], 7, & 4 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

The shape of the top housing and the bottom cover of the light are significant visual features comprising the overall appearance of the patented design and the accused product. The bottom cover in both the patented design and the accused product are generally square in cross section and taper inward as the bottom cover extends downward from the top housing. The bottom cover in the patented design and the accused product both include a large square openings on the bottom presenting a downward facing cavity, and both include fins recessed within the cavity. The top housing is generally square with a top that is generally horizontal and slopes downward to the outside edge giving a roof-like appearance under which the bottom cover is positioned and slightly recessed underneath. The top housing also includes a relatively large square enclosure on top. The strong similarity between the patented design's and the accused product's top housing with the

---

[11] Figure 2 of US D624686 is presented in an orientation rotated 180 degrees from the orientation depicted in US D624686 in order to match the orientation of the similar figures from D'534 and the LS Parking Garage Light.

large square enclosure, together with a strong similarity between the bottom covers for the patented design and the accused product make it more than plausible that an ordinary observer could be deceived into believing that the accused product is the patented design.

Although a simple comparison of the patented design and the accused product is sufficient to conclude that an ordinary observer may plausibly be deceived, considering the representatively close patent prior art reference US D624686 makes the likelihood of deception all the more apparent. Schell Decl. Ex. H. For example, while the patented design and the accused product include a bottom cover with square openings on the bottom presenting a downward facing cavity, the bottom cover of prior art US D624686 has a bottom cover that is flat and fully enclosed with no cavity. Moreover, since US D624686 has a fully enclosed bottom cover, the internal structure is not visible in US D624686, unlike the patented design and the accused device where the internal fins are visible. Still further, US D624686 does not disclose a generally horizontal roof-like portion that slopes gradually downward in the outward direction as in the patented design and the accused product. Rather, US 624686 includes large, prominent, vertically-disposed external fins that slope downward significantly in the outward direction and give a substantially different overall appearance than the patented device and the accused product. Also, unlike the patented design and the accused product, the enclosure on top of US D624686 (depicted as environment) is substantially smaller and generally obscure compared to the relatively large square enclosures on top of the patented design and the accused device.

Defendants point to small differences for individual features of the patented design and accused products but fail to explain how those distinctions makes the overall appearance dissimilar. Specifically, Defendants argue that fins inside the bottom cavity are arranged in columns while the fins in the patented design are arranged around a square. Def. Brief pp. 14-15,

28. However, Defendants' description fails to address the prominence of the large cavity in the bottom housing and how this is similar to the patented design. Since the fins are recessed within the cavity, they are not as readily apparent to the ordinary observer, who may notice the existence of fins but not necessarily their precise orientation. The difference in the arrangement of the fins that are recessed within the bottom cavity, and thus not prominent to the ordinary observer, does not create a different overall impression. Moreover, Defendants' assert the accused device has a trapezoidal bottom cover with sides angled at less than 90 degrees while the patented design includes a square cover with vertical (90 degree) sides. Def. Brief p. 15. However, this is inaccurate since the patented design in fact has a trapezoidal bottom cover with sides angled at less than 90 degrees.

Defendants also fail to weigh the significance of these distinctions against the significance of the similarities in relation to the overall design. See *Ford Global, 2016 WL 3349041 at *10.* In summary, the small differences in angle of the outside walls of the bottom cover and the orientation of the fins within the bottom cavity contribute little to the overall appearance as compared to the overall similarities of the bottom cover (generally square in cross section tapering inward as the bottom cover extends downward from the top housing, with large square openings on the bottom and fins recessed within the cavity) and top housing (generally square with a horizontal top sloping downward giving a roof-like appearance over the slightly recessed bottom cover). It is more than plausible that an ordinary observer familiar with the prior art would be deceived into believing the accused products are the same as the patented design.

III.    CLAIM 10 STATES A CLAIM FOR BREACH OF CONTRACT

Claim 10 of the Complaint asserts that GP Energy and GenerPower breached a Non-Disclosure Agreement with RAB. Dkt 32-2 ("NDA"). Defendants ask this Court to determine now,

at the pleadings stage, that the NDA is not binding because it was not counter-signed by RAB. Any such decision, made without full consideration of the facts surrounding the execution and performance of the NDA, would be premature. See *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F.Supp.2d 605, 610-611 (S.D.N.Y. 2008) (no dismissal where questions of whether agreement was effectively signed and whether defendants' subsequent conduct ratified the agreement required discovery).

Execution by both parties is not a prerequisite for a binding contract. New York law requires only that there be a manifestation of mutual assent sufficiently definite to assure that the parties are in agreement with respect to all material terms. *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 95 (2d Cir. 2007). A contract signed by one party and not the other may be enforced against the executing party even where the contract states that it is "complete and binding upon its execution by all signatories." See *Kowalchuk v. Stroup,* 61 A.D.3d 118, 124 (First Dept. 2009); accord *Fort Miller Co. v. American Transport, Inc.*, 2013 WL 773108, * 4 (N.D. N.Y. February 28, 2013).

Accepting all allegations as true for purposes of this Motion to Dismiss, the Complaint pleads facts sufficient to show that the parties intended to be bound by the NDA. GP Energy executed the NDA and both parties performed under the NDA. RAB provided confidential technical drawings, product and tooling tolerances, painting and pre-cleaning processes, and manufacturing processes to GP Energy. GP Energy accepted the confidential information and used it to produce tooling for RAB's review and feedback. Complaint ¶¶ 33, 35-37. GP Energy and GenerPower are one and the same legal entity operating under different names or, at least, are acting in concert and participation with each other such that both are liable for breach of the NDA. Complaint ¶¶ 5, 7.

IV.     CLAIM 11 STATES A CLAIM FOR TRADE SECRET MISAPPROPRIATION

The elements of a claim for misappropriation of trade secrets under New York law are: (1) possession of a trade secret; (2) defendants used or are using the trade secret; and (3) such use is in breach of an agreement, confidence, or duty, or as a result of discovery by improper means. *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117-118 (2d Cir. 2009). "[A] trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.'" *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999). Trade secrets may include, among other things, "manufacturing drawings pertaining to 'dimensions and tolerances, surface finishes, material selection and treatments, lubrication specifications, and special instructions for manufacture, testing, and assembly.'" *Faiveley Transport Malmo*, 559 F.3d at 117-118.

GenerPower and GP Energy argue that the Complaint does not adequately: (1) plead the existence of the trade secrets, (2) identify the misappropriated trade secrets, and (3) aver that GenerPower and GP Energy used the trade secrets to breach an obligation of confidence. A plain reading of the Complaint reveals that its allegations are more than adequate in all respects to put GenerPower and GP Energy on notice of RAB's trade secret misappropriation claim.

A.      RAB has sufficiently pled the existence of trade secrets

In order to qualify as a trade secret, the information must be used in business and give the owner "an opportunity to obtain an advantage over competitors who do not know or use it.'" *North Atlantic Instruments*, 188 F.3d at 44. RAB has clearly pled the existence of trade secrets: RAB asserts that it provided materials and information to GP Energy that (1) were valuable to RAB's business and critical to maintaining RAB's competitive advantage within the lighting industry, (2)

RAB expended substantial time, personnel and other resources to develop, (3) RAB took reasonable measures to protect, (4) are difficult if not impossible for others to properly acquire or independently duplicate, and (5) are subject to measures to guard their secrecy. Complaint ¶¶ 35, 38-39.

Defendants assert that RAB must not have trade secrets because the design of the fixtures is lost upon sale to the public. Defendants have set up a straw man. The Complaint does not allege that the outside designs of RAB products, as visible to the naked eye, are trade secrets. Rather, RAB's misappropriated trade secrets consist of technical drawings, product and tooling tolerances, painting and pre-cleaning processes, manufacturing processes and quality improvement feedback. Complaint ¶¶ 33, 36-38. Because this type of confidential information is not readily ascertainable by the public, its secrecy is not lost upon sale of the product. See *Helios Intern S.A.R.L. v. Cantemessa USA, Inc.*, 2013 3943267, *12 (S.D.N.Y. July 31, 2013)(while trade secret status of jewelry designs themselves were lost upon sale, trade secret status of underlying formulations, industrial processes, and other internal information was not lost); also *Burroughs Payment Systems, Inc. v. Symco Group, Inc.*, 2012 WL 1670163, *15 (N.D. Cal. May 12, 2012) – (trade secrets accessible to authorized individuals through password are not lost when software is placed in the market).

B.    RAB has sufficiently identified the trade secrets

Defendants also complain that RAB has not identified its trade secrets and has only made conclusory and formulaic allegations. Def. Brief p. 31. RAB has, in fact, identified its trade secrets with more than sufficient particularity at this stage of the litigation. RAB asserts that it provided GP Energy with technical drawings for four of RAB's fixtures, including drawings for the FFLED and SLIM fixtures. Complaint ¶ 33. Additionally, RAB asserts that it provided information on

product and tooling tolerances, painting and pre-cleaning processes, and manufacturing processes. Complaint ¶ 36. GP Energy used the technical drawings and other trade secrets to produce tooling and product samples, and RAB provided feedback identifying deficiencies and advice for improving manufacturing processes. Complaint ¶ 37.

Defendants' argument that RAB should have more specifically identified its trade secrets is misguided. However, precise specificity is not required to defeat a motion to dismiss. *Medtech Products, Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 789 (S.D.N.Y. 2008); see also *SD Prot. V. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. 2007)("Naturally, [plaintiff] has no obligation to reveal those secrets in the Complaint simply to prove they exist."). The plaintiff need only provide fair notice of the information it accuses the defendant of misappropriating, and the Complaint clearly reaches this threshold.

C.     RAB has sufficiently pled improper use of the trade secrets

Defendants next contend that RAB did not adequately plead improper use of the RAB trade secrets by GP Energy and GenerPower. This is also incorrect. RAB alleges that GP Energy, for itself and operating as GenerPower, improperly used RAB trade secrets to manufacture fixtures for sale to ABB, and that GP Energy failed to return all trade secrets to RAB. Complaint ¶¶ 40-41. Continuing their pattern, Defendants set up two straw man arguments: (1) RAB did not identify specific fixtures sold by Defendants that incorporate RAB trade secrets and (2) the Defendants' products do not infringe RAB design patents. Def. Brief p. 32.

First, RAB has identified the fixtures manufactured using RAB trade secrets as those sold by GP Energy and GenerPower to ABB. Complaint ¶ 40. At the pleading stage, prior to discovery, RAB cannot know each specific improper use of RAB trade secrets in connection with each specific fixture manufactured and sold by Defendants. Indeed, it would be nearly impossible for

any plaintiff to meet Defendants' high pleading standard without itself engaging in corporate espionage.

Second, RAB's trade secret misappropriation claim does not rise or fall on RAB's design patent claims. The misappropriated trade secrets consist of technical drawings, product and tooling tolerances, painting and pre-cleaning processes, manufacturing processes and quality improvement feedback. Complaint ¶¶ 33, 36-38. While RAB contends that Defendants' course of conduct (taking RAB trade secrets under one name and using them to produce infringing products under another name) supports finding willful patent infringement, RAB may prevail on its trade secret misappropriation claim regardless of whether it prevails on its design patent claims.

Finally, RAB's trade secret misappropriation claim is properly stated against GP Energy and GenerPower. GP Energy and GenerPower are one and the same legal entity operating under different names or, at least, acted in concert and participation with each other to improperly manufacture fixtures using RAB trade secrets, such that both are liable for misappropriation of RAB's trade secrets. Complaint ¶¶ 5, 7, 40.

## V.   LEAVE TO AMEND ANY DEFICIENT CLAIM SHOULD BE GRANTED

Defendants repeatedly, and without argument or supporting case law, ask the Court to dismiss RAB's claims with prejudice. Rule 15(a)(2) requires a court to freely give leave to amend a complaint when justice so requires. Absent good reason – such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to defendants or futility of amendment – leave to amend should be granted. *Foman v. Davis*, 371 U.S. 178, 183 (1962). As discussed above, RAB has more than met the pleading standards of Rule 8(a). However, if the Court finds that any of RAB's claims is deficient, RAB requests leave to file an Amended Complaint. Defendants have not stated any reason to refuse amendment and none exists.

Dated: July 18, 2016               Respectfully submitted,

_/s/Constance R. Lindman_____
Constance R. Lindman, Esq. (*pro hac vice*)
Eric Lamb, Esq. (*pro hac vice*)
Dennis Schell (*pro hac vice*)
SmithAmundsen, LLC
201 N. Illinois Street, Suite 1400
Indianapolis, IN 46204
Phone (317) 464-4100
Fax (317) 464-4101
clindman@salawus.com
elamb@salawus.com
dschell@salawus.com

Anthony J. Laura, Esq.
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, NJ 07102
Telephone: (973) 642-1900
alaura@ebglaw.com

Attorneys for Plaintiff RAB Lighting Inc.